UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02589-SVW-PLAx | Date | July 9, 2015 |
|---|---|---|---|
| Title | Kamonwan Visajnam, et al. v. Benihana National Corp. | | |

## JS - 6

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** ORDER REMANDING THE CASE TO STATE COURT

### BACKGROUND

According to the complaint, Kamonwan Visajnam and Brandon Hirai worked at a Benihana restaurant in Torrance, California, five days a week for eight dollars per hour. They sued Benihana in state court, accusing their employer of failing to pay overtime wages, provide required meal and rest breaks, comply with other wage & hour laws, and unfair business practices.

Because Benihana is a Delaware company headquartered in Florida, it removed the case to federal court under 28 U.S.C. § 1332. It said Visajnam's claims placed more than $75,000 in controversy and supplemental jurisdiction extended to Hirai's claims. *See* 28 U.S.C. §§ 1332, 1367.[1] But, even according to Benhiana's calculations, Visajnam could only obtain about $40,000 in compensatory damages if he prevailed. Therefore, to meet the threshold, Benihana relied on prospective attorneys' fees Visajnam might incur.

### DISCUSSION

Where, as here, an underlying statute authorizes attorneys' fees, such fees may be included in the amount in controversy. *Galt G/S v. Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *Goldberg v. CPC Int'l Inc.*, 678

---

[1] Generally, multiple plaintiffs cannot aggregate their claims to meet the amount-in-controversy threshold. *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911); *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013). Benihana does not contend that an exception to this rule applies, and Visajnam appears to have the more valuable claim.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02589-SVW-PLAx | Date | July 9, 2015 |
|---|---|---|---|
| Title | Kamonwan Visajnam, et al. v. Benihana National Corp. | | |

F.2d 1365, 1367 (9th Cir. 1982).[2] The subsidiary question — whether post-removal fees are included — remains unanswered in this circuit. *Reames v. AB Car Rental Servs., Inc.*, 899 F. Supp. 2d 1012, 1018 (D. Or. 2012). This district is split. *Compare, e.g.*, *Kinder v. P.F. Chang's China Bistro, Inc.*, No. CV 15-287-JGB-KK, 2015 WL 2453523, at *4 (C.D. Cal. May 21, 2015) (excluding fees), *with Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154-AV-AJW, 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015) (including fees). Other district courts in this circuit similarly disagree. *Compare, e.g.*, *Dukes v. Twin City Fire Ins. Co.*, No. CV-09-2197-OHX-NVW, 2010 WL 94109, at *2 (D.Ariz. Jan. 6, 2010) (excluding fees), *with Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) (including fees). And even the courts of appeals are flummoxed. *Compare Hart v. Schering-Plough Corp.*, 253 F.3d 272, 273-74 (7th Cir. 2001) (excluding fees), *with Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368-69 (4th Cir. 2013) (including fees); *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1988) (same).

At bottom, these decisions disagree about what "in controversy" means. 28 U.S.C. § 1332. If that term includes all relief that a plaintiff would obtain if he prevailed at trial, post-removal fees ought to be included. If it merely entails an estimate of the potential liability as it stands at the moment of removal, however, post-removal fees should be excluded because they have not, by definition, accrued. In other words, what measures the controversy: plaintiff's recovery including the maximum outlay he would need to get there, or the amount that would fully satisfy plaintiff's alleged injury at the time of removal?

The Court finds the latter position persuasive. A court considers the jurisdictional facts as they exist on the date of removal. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004). A defendant could, at that point, fully satisfy the plaintiff by proffering all damages and already-incurred fees. *See* Fed. R. Civ. P. 68; *Hart*, 253 F.3d at 273. Therefore, post-removal attorneys' fees are not necessary to compensate the plaintiff when the case is removed. *Ergo*, they are not "*in* controversy" because they are not the *present* subject of dispute at the time of removal. 28 U.S.C. § 1332 (emphasis added).

Judge Easterbrook convincingly illustrated this point in *Gardynski-Leschuck v. Ford Motor Company*, 142 F.3d 955, 958-59 (7th Cir. 1998):

> One way to determine at the outset the amount in controversy attributable to legal fees would be to use the anticipated outlay, reducing uncertainties to present value much the way the expected value of lost future income is determined in a tort case. . . . Yet this calculation includes the value of legal services that have not been and may never be incurred, and are therefore not "in controversy" between the parties. Unlike future income lost to injury, legal fees are avoidable. It is essential to distinguish between the likely course of litigation and the legal rights of the parties. Suppose the McCoys sell a garden rake for $10 to the Hatfields, who find it defective. The Hatfields could buy a new rake at Sears for $10, but instead they file suit against the McCoys under the Magnuson-Moss Warranty Act. They state in the complaint that they anticipate attorneys' fees of $50,000 (for a total

---

[2] Section 1194(a) of California's Labor Code permits Visajnam and Hirai to recover fees if they prevail.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02589-SVW-PLAx | Date | July 9, 2015 |
|---|---|---|---|
| Title | Kamonwan Visajnam, et al. v. Benihana National Corp. | | |

amount-in-controversy of $50,010), because the enmity of the parties makes settlement impossible. Assume this is factual — that the Hatfields and McCoys will fight the case to the last dollar in their bank accounts. Still, the amount "in controversy" between the parties at the outset is no more than $10, the sum the McCoys would have to pay to resolve the case on the date it was filed. *Accord Hart*, 253 F.3d at 274.[3]

This conclusion also fits within the paradigm of hostility toward diversity jurisdiction. The federal judiciary has long curbed any expansion of diversity jurisdiction. David L. Shapiro, Federal Diversity Jurisdiction: A Survey and A Proposal, 91 Harv. L. Rev. 317, 318 (1977); *see also, e.g.*, *Sheldon v. Sill*, 49 U.S. 441, 449 (1850); *Strawbridge v. Curtiss*, 7 U.S. 267, 267-68 (1806); *Turner v. Bank of North America*, 4 U.S. 8, 10 (1799); *Bingham v. Cabot*, 3 U.S. 382, 383 (1798). And for good reason: there is a congressional imperative to inhibit its reach, *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *St. Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 288 (1938), as well as a judicial preference for doing so, *see Richardson v. Comm'r of Internal Revenue*, 126 F.2d 562, 567 (2d Cir. 1942) (observing that federal courts "play the role of ventriloquist's dummy" in diversity cases); Dolores K. Sloviter, A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism, 78 Va. L. Rev. 1671, 1684-87 (1992) (noting the risk that widespread diversity jurisdiction would upset principles of federalism and comity); Larry Kramer, Diversity Jurisdiction, 1990 BYU L. Rev. 97, 106-07 (1990) (acknowledging that most of diversity's original justifications no longer exist). After all, "[t]he jurisdiction given to the federal courts in cases between citizens of different states, was, at the time of the adoption of the constitution, supposed to be of very little importance to the people." *Hepburn & Dundas v. Ellzey*, 6 U.S. 445, 450 (1805) (quoting argument of Charles Lee); *see also* Henry J. Friendly, The Historic Basis of Diversity Jurisdiction, 41 Harv. L. Rev. 483, 487-88 (1928) ("The most astounding thing, however, is not the vigor of the attack but the apathy of the [founders'] defense [for diversity jurisdiction].").

Moreover, the contrary approach would swallow the restriction. The amount-in-controversy requirement prevents federal courts from being overrun with diversity cases. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969). But the median billable rate for a labor & employment partner in Los Angeles is $450, *Real Rate Report*, Appx. A

---

[3] Some courts have rebuked this argument for ignoring the fact that cases often require substantial effort to resolve. *E.g.*, *Brady*, 243 F. Supp. 2d at 1011. These arguments misappreciate Judge Easterbrook's point. *Gardynski-Leschuck* does not concern itself with the general reality of litigation. The emphasis is instead on the scope of the particular legal right in the particular case at the particular time of the removal. As Judge Easterbrook said,

> It is essential to distinguish between the likely course of litigation and the legal rights of the parties. . . . Assume . . . [the parties] will fight the case to the last dollar in their bank accounts. Still, the amount "in controversy" between the parties at the outset is . . . the sum the [defendants] would have to pay to resolve the case on the date it was filed [or removed].

142 F.3d 955. *Gardynski-Leschuck* does not ignore the likely course of litigation; it purposefully disregards it as irrelevant.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02589-SVW-PLAx | Date | July 9, 2015 |
|---|---|---|---|
| Title | Kamonwan Visajnam, et al. v. Benihana National Corp. | | |

p. 129 (2014), and the average employment case — from inception through trial — entails about 350 billable hours, Nat'l Center for State Courts, Estimating the Cost of Civil Litigation, 20 Caseload Highlights 1, 6 (2013). Relying on the assumption that a "jury would return a verdict for the plaintiff" and the "reality of litigation" would mean *every* employment case in this district met the amount-in-controversy threshold.[4] That simply can't be.

It also would prove unworkable.  If courts considered post-removal fees, they would have to create a methodology for prognostication.  Actuarial analysis is impossible because "attorney fees are extremely irregularly distributed, and marked by high positive kurtosis and skew," ensuring that any algorithm, "no matter how exquisitely crafted, will inevitably and systematically produce dramatically inaccurate predictions a significant proportion of the time." *Reames*, 899 F. Supp. 2d at 1021.  The only methodology, therefore, is analogical.[5]  But post-removal attorneys' fees are contingent on the vagaries of litigation. *Grieff v. Brigandi Coin Co.*, No. C14-214 RAJ, 2014 WL 2608209, at *3 (W.D. Wash. June 11, 2014).  So comparing a case at removal to others that proceeded through trial would not provide accurate estimates.

**CONCLUSION**

Courts must be sensitive to several considerations when construing the extent of their diversity jurisdiction.  The best interpretation of the words "in controversy" counsels against using post-removal fees when determining the propriety of jurisdiction.  Considerations of judicial economy and comity strengthen that

---

[4] One might contend that this data only suggests that the average employment case could be removed. Attorneys, however, rarely concede that their fees or time will be below average.  Moreover, a lawyer need only bill 300 hours at a $250 per hour to reach $75,000, and there must be some amount in controversy beyond attorneys' fees. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990).  Thus, instead of operating as meaningful limitation on the federal docket, the amount-in-controversy requirement would be a vestigial formality. *See Nelson v. Keefer*, 451 F.2d 289, 293-95 (3d Cir. 1971) (chastising the federal judiciary for its timidity in pursuing the congressional mandate to ferret out diversity cases that do not raise a substantial (financial) controversy); *Foiles by Foiles v. Merrell Nat. Labs.*, 730 F. Supp. 108, 110 (N.D. Ill. 1989) (observing that Congress intended the one-year time limit and amount-in-controversy threshold to operate as "a substantive limit on jurisdiction").

[5] Juxtaposition with other cases is the only workable method because any other form of proof would be too speculative to pass as summary-judgment-type evidence. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). For example, estimates about potential fees lack a reliable methodology to bring them within the ambit of expert testimony. *See* Fed. R. Evid. 702; *Reames*, 899 F. Supp. 2d at 1021. Therefore, fee estimates from a lawyer — even an experienced one — would veer into the proscription against lay testimony, *see* Fed. R. Evid. 701, and be rife with bias, *see Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (permitting courts to consider credibility when finding jurisdictional facts).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02589-SVW-PLAx | Date | July 9, 2015 |
|---|---|---|---|
| Title | Kamonwan Visajnam, et al. v. Benihana National Corp. | | |

conclusion.  Therefore, because Benihana relies on post-removal fees to reach Section 1332's threshold, the Court **REMANDS** the case to state court.